# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs November 15, 2011

## TRINA DAWN HOLDWAY JOHNSON v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Sullivan County**
**No. C58522     R. Jerry Beck, Judge**

---

**No. E2011-00348-CCA-R3-PC - Filed January 18, 2012**

---

The petitioner, Trina Dawn Holdway Johnson, appeals the denial of her petition for post-conviction relief, claiming that she was denied the effective assistance of counsel and that counsel's faulty advice rendered her guilty plea unknowing and involuntary. Discerning no error, we affirm.

**Tenn. R. App. P. 3; Judgment of the Circuit Court Affirmed**

JAMES CURWOOD WITT, JR., delivered the opinion of the Court, in which D. KELLY THOMAS, JR., and CAMILLE R. MCMULLEN, JJ., joined.

Katherine L. Tranum, Kingsport, Tennessee, for the appellant, Trina Dawn Holdway.

Robert E. Cooper, Jr., Attorney General and Reporter; Brent C. Cherry, Assistant Attorney General; H. Greeley Wells, Jr., District Attorney General; and Adam Moore, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

On May 10, 2010, the petitioner entered best-interest pleas of guilty to one count of the sale of cocaine and one count of the delivery of cocaine within 1,000 feet of Holston View Elementary School. Pursuant to a plea agreement, the convictions were merged, and the petitioner received a Range I sentence of eight years' incarceration to be served at 100 percent by operation of law. The State offered the following summary of the facts at the guilty plea submission hearing:

> On April 3rd, 2008, Ginger Crowe, who is an officer with the
> Bristol Tennessee Police Department, met with a confidential

informant, Lisa Thompson, in reference to making a purchase of crack cocaine.

Upon meeting with the confidential informant, they were searched, and no contraband was found. The . . . confidential informant was then fitted with a video and audio recording device on their person.

The confidential informant made a recorded phone call to a female known to her as "*Trina*." Trina advised the confidential informant if they would just come to their house [sic]. The confidential informant was then provided a $100 in recorded money [sic] to make the purchase.

After a few minutes, Officer Crowe could hear the confidential informant speaking with a female. Officer Crowe could hear a brief conversation. After a short conversation, Officer Crowe could hear the female asking to stay at the confidential informant's house. Officer Crowe heard the confidential informant advising that they would just give Trina a ride to Springdale.

Officer Crowe then received a phone call from the confidential informant advising that they were giving Trina a ride to Springdale. The confidential informant advised also that they would leave the stuff on the counter, meaning leave the dope on the counter. Officer Crowe observed the confidential informant leaving the area. Within a short time the confidential informant returned. Officer Crowe met with the confidential informant and retrieved two Baggies of crack cocaine. The video and audio recording devices were removed. The confidential informant was once again searched and no contraband was found. Officer Crowe later field-tested the white chunky substance, and it showed positive for the presence of cocaine.

All of the above transaction occurred within 1,000 feet of real property comprising a public elementary school, Holston View Elementary School, here in Sullivan County.

(alteration in original).

In her timely-filed petition for post-conviction relief, the petitioner claimed, among other things, that she was deprived of the effective assistance of counsel and that, as a result, her guilty plea was not knowingly and voluntarily entered. At the evidentiary hearing, the petitioner testified that trial counsel initially misinformed her regarding her potential punishment, telling her she was subject to a Range I rather than Range III sentence. She said that she and counsel viewed the video recording of the controlled buy and agreed that the theory of defense would be that the petitioner was guilty of no more than facilitation of the sale of cocaine. Trial counsel told her that, should she be convicted of that offense, she faced a maximum sentence of six years and that she would be eligible for probation.

A week before her trial date, trial counsel told the petitioner that he had made a mistake regarding her potential punishment, explaining that her previous criminal history qualified her as a Range III offender. He told the petitioner that, should she be convicted as charged, she faced a potential sentence of 40 to 60 years' incarceration and a 100 percent release eligibility. The petitioner testified that counsel said that even if she was convicted of facilitation, she faced a minimum of 20 years' incarceration and a 100 percent release eligibility. The petitioner said that trial counsel provided her with written documentation of her potential range of punishment and asked her to sign an acknowledgment saying she had been informed. That same day, trial counsel told the petitioner that the State had made a plea offer for a sentence of eight years to be served at 100 percent in exchange for the petitioner's plea of guilty to the reduced charge of the sale of cocaine. He also told her that if she did not accept the offer right away, the State would withdraw it.

The petitioner said that counsel's revelation shocked her, and she told him she still wanted to go to trial. She testified that counsel told her that "he didn't feel like [her] health would withstand the stress of a trial." He also told her that she had "no choice" but to accept the plea agreement if she wanted to get her "life back at some point." At that point, the petitioner said, she asked for a new attorney. She testified that counsel returned with another attorney, who confirmed trial counsel's information and agreed with his advice that the petitioner accept the plea offer. The petitioner said that she agreed to accept the offer despite her discomfort with the decision. She explained, "I did not want to enter this plea. I mean, if I got 100 years for something I did, I can handle that." She said she had "set [her] mind" on serving six years on probation and that she did not have sufficient time to consider the revised information regarding potential punishment or the State's offer.

During cross-examination, the petitioner admitted that trial counsel told her not to "get [her] hopes up" that she would be acquitted. She conceded that counsel clarified her potential range of punishment five days before she entered her plea and that counsel "did

-3-

everything he could." She nevertheless maintained that his initial misinformation "put the case in turmoil." She admitted that she never mentioned her apprehension or difficulties with counsel to the trial court and that she was familiar with the plea process, having entered guilty pleas on previous occasions in the same court.

Trial counsel, an assistant public defender, testified that he began representing the petitioner on July 2, 2009, and did so continuously until she entered her plea on May 10, 2010. Counsel admitted that he initially misinformed the petitioner regarding her sentencing range and that, based on his initial mistake, he told her that should she be convicted of facilitation of the sale of cocaine, she "would be looking at six years." Counsel said that he informed the petitioner immediately after realizing his mistake and had the petitioner sign an acknowledgment that she had been informed of her actual potential range of punishment because he "felt very strongly" that the petitioner would "turn on him" and "complain" if she was not happy with the outcome. Counsel said that he advised the petitioner to accept the plea offer, even going so far as to tell her that refusing the offer would be "a huge mistake," but he insisted that he had "never, ever" told any client that they had "no choice" but enter a guilty plea.

Trial counsel admitted that he and the petitioner had engaged in "heated" conversations regarding the potential for a lengthy period of incarceration, explaining that the petitioner did not believe that the State should be permitted to use her prior convictions to enhance her sentence because she "was not guilty" of those prior offenses. Counsel testified that when the petitioner expressed that she was no longer sure whether she could trust him, he asked a colleague from the public defender's office to speak with her. After speaking with his colleague, the petitioner agreed to accept the State's offer.

Trial counsel's colleague, another assistant public defender, testified that he met with the petitioner at trial counsel's request and discussed with her "possible ranges that she would be facing." He explained the sentence ranges and provided the petitioner with copies of the relevant Code sections detailing the potential punishments.

In its written order denying post-conviction relief, the post-conviction court specifically accredited the testimony of trial counsel and his colleague that the petitioner was aware of the accurate range of punishment and that she voluntarily accepted the State's offer and pleaded guilty. The court found that the petitioner's testimony was not credible. The post-conviction court concluded that, despite counsel's initial bad advice, the petitioner was not deprived of the effective assistance of counsel and that her guilty plea was knowingly and voluntarily entered.

In this appeal, the petitioner reiterates her claims that trial counsel was

-4-

ineffective and that her guilty plea was unknowing and involuntary. We view each of the petitioner's claims with a few well-settled principles in mind. Post-conviction relief is available only "when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103 (2006). A post-conviction petitioner bears the burden of proving his or her allegations by clear and convincing evidence. *Id.* § 40-30-110(f). On appeal, the appellate court accords to the post-conviction court's findings of fact the weight of a jury verdict, and these findings are conclusive on appeal unless the evidence preponderates against them. *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997). By contrast, the post-conviction court's conclusions of law receive no deference or presumption of correctness on appeal. *Fields v. State*, 40 S.W.3d 450, 453 (Tenn. 2001).

To establish entitlement to post-conviction relief via a claim of ineffective assistance of counsel, the post-conviction petitioner must affirmatively establish first that "the advice given, or the services rendered by the attorney, are [not] within the range of competence demanded of attorneys in criminal cases," *see Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975), and second that his counsel's deficient performance "actually had an adverse effect on the defense," *Strickland v. Washington*, 466 U.S. 668, 693 (1984). In other words, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. In the context of a guilty plea, the petitioner must establish that "counsel's constitutionally ineffective performance affected the outcome of the plea process" by establishing "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *see Hicks v. State*, 983 S.W.2d 240, 246 (Tenn. Crim. App. 1998). Should the petitioner fail to establish either deficient performance or prejudice, he is not entitled to relief. *Id.* at 697; *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). Indeed, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Strickland*, 466 U.S. at 697.

When reviewing a claim of ineffective assistance of counsel, we will not grant the petitioner the benefit of hindsight, second-guess a reasonably based trial strategy, or provide relief on the basis of a sound, but unsuccessful, tactical decision made during the course of the proceedings. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). Such deference to the tactical decisions of counsel, however, applies only if the choices are made after adequate preparation for the case. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

"Whether a plea was knowing and voluntary is an issue of constitutional

dimension because 'the due process provision of the federal constitution requires that pleas of guilty be knowing and voluntary.'" *State v. Wilson*, 31 S.W.3d 189, 194 (Tenn. 2000) (quoting *Johnson v. State*, 834 S.W.2d 922, 923 (Tenn. 1992)). A plea "may not be the product of '[i]gnorance, incomprehension, coercion, terror, inducements, [or] subtle or blatant threats.'" *Wilson*, 31 S.W.3d at 195 (quoting *Boykin*, 395 U.S. at 242-43); *see also State v. Mellon*, 118 S.W.3d 340, 345 (Tenn. 2003) ("Certainly, a plea is not 'voluntary' if it results from ignorance, misunderstanding, coercion, inducements, or threats.") (citing *Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993)); *see Sexton v. State*, 151 S.W.3d 525, 532 (Tenn. Crim. App. 2004) (stating that "the nature of the proceeding, the exchange between the trial court and the petitioner, and the relatively beneficial plea agreement reflect the petitioner's knowledge and understanding that [his] constitutional rights relative to the trial process were not to be asserted by [him] any further").

Both claims of ineffective assistance of counsel and involuntary guilty plea are mixed questions of law and fact. *Lane v. State*, 316 S.W.3d 555, 562 (Tenn. 2010); *State v. Honeycutt*, 54 S.W.3d 762, 766-67 (Tenn. 2001); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). When reviewing the application of law to the post-conviction court's factual findings, our review is de novo, and the post-conviction court's conclusions of law are given no presumption of correctness. *Fields*, 40 S.W.3d at 457-58; *see also State v. England*, 19 S.W.3d 762, 766 (Tenn. 2000).

In our view, the evidence does not preponderate against the findings of the trial court. Trial counsel initially misinformed the petitioner regarding her potential punishment but corrected his mistake as soon as he realized it. The petitioner was fully apprised of her potential range of punishment by trial counsel, his colleague, and the trial court prior to making her plea. Although the petitioner faced a potential sentence of as much as 60 years' incarceration, trial counsel successfully negotiated a sentence of eight years' incarceration. That the petitioner would have liked more time to consider the offer or that she was upset to discover her true potential range of punishment does not equate to a deprivation of the effective assistance of counsel. The transcript of the guilty plea submission hearing confirms that the petitioner was accurately advised of her potential range of punishment, that she understood that the choice to enter the guilty plea was hers alone, and that she entered the plea entirely of her own volition. The petitioner's familiarity with the justice system, and the entering of a guilty plea in particular, belies any claim that she was overwhelmed by the procedure. The petitioner has failed to establish any entitlement to post-conviction relief.

Accordingly, the judgment of the post-conviction court is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE